IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SASHA BRIANTHOMAS H., | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO.  25-cv-659 |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                                    **July 15, 2025**

Plaintiff Sasha Brianthomas H. brought this action seeking review of the Commissioner of Social Security Administration's (SSA) decision denying his claim for Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 403-433, 1381-1383f.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 14) is **DENIED**.

## I.    PROCEDURAL HISTORY

Plaintiff filed for SSDI and SSI, alleging disability since April 1, 2021, due to irritable bowel syndrome (IBS).  (R. 313).  Plaintiff's application was denied at the initial level and upon reconsideration, and he requested a hearing before an Administrative Law Judge (ALJ).  (R. 110-19, 126-35).  Plaintiff, represented by counsel, and a vocational expert (VE) testified at the April 11, 2024 administrative hearing.  (R. 33-61).  On May 8, 2024, the ALJ issued a decision unfavorable to Plaintiff.  (R. 14-32).  Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review on December 18, 2024, thus making the ALJ's

decision the final decision of the Commissioner for purposes of judicial review.  (R. 1-6).

On February 6, 2025, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania.  (Compl., ECF No. 1).  Plaintiff consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) two days later.  (Consent, ECF No. 5).  On March 23, 2025, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  (Pl.'s Br., ECF No. 14).  The Commissioner filed a response on June 20, 2025, and Plaintiff filed a reply on July 7, 2025.  (Resp., ECF No. 15; Reply, ECF No. 16).

## II.     FACTUAL BACKGROUND[1]

Plaintiff completed one year of community college.  (R. 317).  He previously worked as a store manager at Radio Shack, a cellphone technical support professional and the lead technician in desktop support for a community college IT department.  (*Id.*).

### A.     Medical Evidence

On February 11, 2021, Plaintiff visited Darren J. Andrade, M.D., of Clinical Gastroenterology Associates for an evaluation of ulcerative proctosigmoiditis.  (R. 468).  Dr. Andrade noted that Plaintiff was last seen for a flare up approximately one year earlier, but that "[r]ecently he is doing okay," with three to four bowel movements per day, usually in the morning.  (*Id.*).  Dr. Andrade added that Plaintiff was taking mesalamine for his condition but referred him for a flexible sigmoidoscopy to determine if he could taper off it.  (R. 468-69).  One month later Plaintiff had the procedure, which showed "a scattered area of mildly erythematous mucosa . . . in the recto-sigmoid colon . . . ."  (R. 435).  "Findings were significantly improved compared to prior exam," and Plaintiff was directed to taper down his mesalamine.  (*Id.*).

---

[1]  This Court summarizes only the facts relevant to the single issue raised by Plaintiff regarding his need for restroom access.

Plaintiff returned to Dr. Andrade on July 7, 2021, following a bout of diarrhea and abdominal pain one month earlier. (R. 470). He reported that in the interim he had returned his mesalamine dosage to its prior level, which had slowly improved his symptoms and reduced his bowel movements to three daily. (*Id.*). Dr. Andrade advised Plaintiff to maintain the higher dosage of mesalamine for eight weeks before again attempting to taper it down. (*Id.*).

On September 30, 2022, Plaintiff attended his first consultative examination by Marielle Stone, M.D. (R. 483-97). He reported diagnoses of ulcerative colitis (UC) and IBS, with 10 morning bowel movements and constant abdominal pain. (R. 485). He claimed that his mesalamine was no longer working and that his dicyclomine caused side effects. (*Id.*). He tied his frequent bowel movements and abdominal pain to headaches lasting two to three days. (*Id.*). Plaintiff reported activities of daily living (ADLs) including driving, doing laundry, shopping, cooking and personal care. (R. 486). His physical examination results were largely normal, with mild abdominal tenderness and distension. (R. 487-88). Dr. Stone assessed his prognosis as fair to poor. (R. 488). In the attached Medical Source Statement of Ability to Do Work-Related Activities (Physical), she added that the "claimant needs unrestricted restroom access and readily available facilities due to his ulcerative colitis." (R. 494).

On October 20, 2022, and July 14, 2023, respectively, State agency physicians Lelwellyn Antone Raymundo, M.D., and David Paul Clark, M.D., acknowledged Plaintiff's gastrointestinal problems in their administrative findings but proffered no work restrictions regarding restroom access. (R. 82-83, 96-97).

Plaintiff returned to Dr. Stone for another consultative examination on July 10, 2023. (R. 507-23). New reported symptoms included anal leakage throughout the day, occasional episodes of bowel incontinence and consistently loose stools. (R. 509). He also related that after moving (or feeling that he has to move) his bowels about 10 times per morning he will have another

bowel movement every few hours for the rest of the day. (*Id.*). Plaintiff further claimed that he no longer cooked, cleaned or did laundry and that he now required help at home. (R. 510). His physical examination results were again largely normal, although he continued to exhibit mild abdominal tenderness. (R. 511). Dr. Stone assessed his prognosis as fair and reaffirmed his need for unrestricted restroom access. (R. 518).

On December 13, 2023, Plaintiff treated with Tara Chapman, PA-C, of Einstein Gastroenterology Associates at Blue Bell (Pennsylvania) for diarrhea and abdominal pain. (R. 663-65). She recorded that Plaintiff had been "doing a bit better" "[f]or a while" after having changed his diet, but for the last year he had had rather consistent symptoms due to a lack of ongoing treatment after losing his health insurance. (R. 663). Because Plaintiff had regained insurance, he chose to seek treatment. (*Id.*). He informed Chapman that he had instances of diarrhea approximately 10 times per day, usually worse in the morning, and that the associated abdominal pain improved as the diarrhea temporarily resolved. (*Id.*). The pain and sometimes the diarrhea then returned in the evening after he ate his first meal of the day. (*Id.*). He further explained that his symptoms were not as bad when he ate home-cooked meals rather than fast food. (*Id.*).

Plaintiff followed up on February 28, 2024, regarding ongoing diarrhea. (R. 692). Chapman indicated that after doubt arose at the last visit as to whether Plaintiff had IBS or UC she had obtained and reviewed "his old records which confirm[ ] 20 cm of colitis in 2019 with similar distribution but less severity in 2021." (*Id.*). She also noted that a planned colonoscopy following the prior visit had not gone forward due to scheduling issues and the inability to reach Plaintiff. (*Id.*). At the visit, Plaintiff reported feeling poorly overall and stabbing pain during nighttime diarrhea, but also that it was improved by Imodium, not overly bothersome during the day, and not as bad if he avoided fast food. (*Id.*).

### B.    Nonmedical Evidence

The record also contains nonmedical evidence.  At the April 11, 2024 administrative hearing, Plaintiff testified that he was working full-time until his office closed in March 2020 pursuant to the Covid lockdown.  (R. 40-41).  Since April 2020 he has worked part-time (approximately 12 hours weekly) as a Door Dash driver when his symptoms permit.  (*Id.*).  He stated that his prior physician diagnosed him with IBS, but that his current one has changed the diagnosis to UC.  (R. 49).  He claimed that his condition kept him "constantly" in the restroom, although he later clarified that this meant every one to two hours.  (R. 44, 47).  He indicated that his bowel movement frequency is worse in the morning then "slows down" as the day progresses.  (R. 47-48).  Specifically, he reported "running to the restroom [ ]several times in the morning, sitting there for longer periods of time and really . . . be[ing] incapacitated until like 1:00/2:00 in the afternoon."  (R. 50).  Nonetheless, he carries extra underwear "because it happens throughout the whole entire day."  (*Id.*).  He added that keeping his "food intake slow" may help with his symptoms.  (*Id.*).  Finally, he attributed any gaps in his treatment history to a lack of insurance during those periods.  (R. 48).

## III.    ALJ'S DECISION

Following the administrative hearing held on April 11, 2024, the ALJ issued a decision in which she made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2026.

2.    The claimant has not engaged in substantial gainful activity since April 1, 2021, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: irritable bowel syndrome,

cluster headaches, chronic pain syndrome, ulcerative colitis without complication, and obesity. (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no climbing of ladders[,] ropes or scaffolds; frequent kneeling; and can do other postural activities occasionally; and must avoid concentrated exposure to extreme heat, wetness or humidity, vibrations, operation of motor vehicles, and moving machinery.

6.      The claimant is capable of performing past relevant work as a help desk technician (DOT 032.262-010, sedentary, SVP 7). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.      The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2021, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(R. 17-27).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 27).


## IV.    LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that he cannot engage in substantial gainful activity because of a medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of at least 12 months.  42 U.S.C. §

1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently
> engaged in substantial gainful activity.  If she is not, then the
> Commissioner considers in the second step whether the claimant has
> a "severe impairment" that significantly limits her physical or
> mental ability to perform basic work activities.  If the claimant
> suffers a severe impairment, the third inquiry is whether, based on
> the medical evidence, the impairment meets the criteria of the
> impairment listed in the "listing of impairments," . . . which result
> in a presumption of disability, or whether the claimant retains the
> capacity to work.  If the impairment does not meet the criteria for a
> listed impairment, then the Commissioner assesses in the fourth step
> whether, despite the severe impairment, the claimant has the
> residual functional capacity to perform her past work.  If the
> claimant cannot perform her past work, then the final step is to
> determine whether there is other work in the national economy that
> the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4).  The disability claimant bears the burden of establishing steps one through four.

If the claimant is determined to be unable to resume previous employment, the burden shifts to

the Commissioner at step five to establish that, given the claimant's age, education, work

experience, and mental and physical limitations, he is able to perform substantial gainful

activities in jobs existing in the national economy.  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88,

92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  A district court is

bound by the factual findings of the Commissioner if they are supported by substantial evidence

and decided according to correct legal standards.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.

1999).  Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a

reasonable mind might accept as adequate."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118

(3d Cir. 2000) (citations omitted).  Even if the record could support a contrary conclusion, the

decision of the ALJ will not be overruled as long as there is substantial evidence to support it.

*Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).  The court has plenary review of legal

issues.  *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

V.      **DISCUSSION**

In his request for review, Plaintiff raises a single issue: "Was the ALJ's rejection of Dr.

Stone's opinion concerning Plaintiff's need for unrestricted restroom access and readily available

facilities due to ulcerative colitis unsupported by substantial evidence?"  (Pl.'s Br., ECF No. 14,

at 1).

A.      **The Parties' Positions**

In addition to summarizing the applicable background law, Plaintiff takes issue with the

ALJ's rejection of certain limitations proffered by Dr. Stone, specifically her conclusions that he

required unrestricted access to readily available restrooms due to his UC.  (*Id.* at 4-6, 8 (citing R.

494, 518)).  Plaintiff maintains that the ALJ's determination that there are "no objective findings

consistent" with these restrictions notwithstanding his subjective claims[2] misses the mark

because his 2019 and 2021 colonoscopies confirmed "20 cm of colitis," albeit "with less severity

in 2021."  (*Id.* at 7-8).  Noting that such tests are an accepted means of diagnosing colitis, he

further observes that he was prescribed medications for this condition.  (*Id.*).  He insists that

because ulcerative colitis is "inherently urgent, frequent, and unpredictable," he necessarily

requires an RFC restriction regarding restroom access.  (*Id.* at 7-9 (quoting *Leo v. Comm'r of*

---

[2]  As Plaintiff sets forth in his brief, these subjective complaints included statements to
Dr. Stone at the two consultative examinations that his UC caused abdominal pain and urgent
and frequent bowel movements (up to 10 per day).  (Pl.'s Br., ECF No. 14, at 6 (citing R. 485,
509)).  He adds that these statements were consistent with those he made to his gastroenterologist
in December 2023.  (*Id.* (citing R. 663)).

*Soc. Sec.*, No. 1:18-CV-00214-MAT, 2019 WL 4508937, at *6 (W.D.N.Y. Sept. 19, 2019))).  In

support of this claim, he points to his statements to providers that he requires four (when

medicated) and 10 (when not)[3] restroom breaks, primarily in the morning and lasting 10 to 20

minutes each.  (*Id.* at 7-8 (citing R. 48, 485, 509, 655, 663)).  He calculates on this basis that

during the first half of a workday he could require anywhere from four additional, unscheduled

10-minute breaks to 10 20-minute ones.  (*Id.* at 8).  Contrasting this evidence with the VE's

testimony that an individual who takes "excessive" restroom breaks or is off-task 15 percent or

more of the time cannot maintain competitive employment, Plaintiff contends that even "at the

low end" of 40 minutes away from his workstation his ulcerative colitis could be work-

preclusive.  (*Id.*).

The Commissioner provides his own counterstatement of the applicable background law,

summarizes Dr. Stone's two opinions and asserts that the ALJ fully complied with the

regulations by explicitly considering the supportability and consistency of the opinions.  (Resp.,

ECF No. 15, at 5-7).  Regarding supportability, the Commissioner emphasizes that the ALJ

explained that Dr. Stone made no examination findings supporting the degree of limitation

proffered and that, instead, the purported need for unrestricted restroom access seems to have

derived solely from Plaintiff's own self-reports regarding his bowel habits.  (*Id.* at 7 (citing R.

485-88, 509-12)).  As for consistency, the Commissioner points to the ALJ's "no objective

findings" statement, further noting that little evidence existed to corroborate the alleged severity

of Plaintiff's symptoms beyond his own inconsistent statements to providers.  (*Id.* (citing R. 25)).

The Commissioner points out that although Plaintiff's colonoscopies confirmed the diagnosis of

---

[3] Plaintiff acknowledges that for a significant period he did not seek treatment for his UC due to a lack of insurance, but he reminds the Court that this fact cannot be held against him. (Pl.'s Br., ECF No. 14, at 8 (citing *Plank v. Colvin*, No. CIV. 12-4144, 2013 WL 6388486, at *8 (E.D. Pa. Dec. 6, 2013))).

ulcerative colitis, neither these tests nor the diagnosis itself established the severity of Plaintiff's

condition.  (*Id.* (citing R. 692)).  He asserts that for this reason the ALJ turned to Plaintiff's

clinical records to evaluate the nature and effectiveness of his treatment, which she determined

had been limited yet partially successful.  (*Id.*).  Specifically, the Commissioner underscores the

ALJ's observation that at times Plaintiff's colitis flareups were infrequent, such as in February

2021 when he told his gastroenterologist that he had not had one in a year, that he was doing

"okay," and that his bowel movements were limited to three or four per day.  (*Id.* at 7-8 (citing

R. 22, 456)).  He adds that the ALJ also explained how Plaintiff's increased symptoms tended to

occur during gaps in his treatment.  (*Id.* at 8 (citing R. 23-24, 663, 692)).

Moreover, the Commissioner argues that Dr. Stone's opinions were inconsistent with

Plaintiff's ADLs, including personal care, cooking and other household chores, and, especially,

working 12 hours per week as a delivery driver.  (*Id.* (citing R. 21-23, 39; *Turby v. Barnhart*, 54

F. App'x 118, 122 n.1 (3d Cir. 2002); *Costello v. Comm'r of Soc. Sec.*, No. 20-15540, 2022 WL

807382, at *5 (D.N.J. Mar. 17, 2022))).  He continues that the opinions were also inconsistent

with the administrative findings of two State agency medical experts concluding that Plaintiff

could work a full range of medium work with no attendant limitations regarding restroom access,

despite the fact that both had considered Dr. Stone's opinions.  (*Id.* at 8 (citing R. 83-84, 90-91)).

Noting that the regulations provide that such administrative findings may constitute compelling

evidence, and that the ALJ credited them in part in this case, the Commissioner stresses that the

ALJ nonetheless crafted a "more restrictive" RFC than what was set forth in the findings.  (*Id.* at

8-9 (citing R. 21, 25; 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1)) (emphasis added)).  He

accuses Plaintiff of asking the Court to reweigh the evidence and hold that the mere diagnosis of

an inflammatory bowel disease necessarily requires unrestricted restroom access, even though

applicable regulations provide that disability is established not by the presence of an impairment

but from the functional limitations resulting therefrom. (*Id.* at 9 (citing 20 C.F.R. §§ 404.1521, 416.921; *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011))). In closing, the Commissioner reiterates that nothing in the record objectively established that Plaintiff needed greater than normal restroom access on an ongoing and continuing basis, and thus he failed to establish that the ALJ's decision finding him not disabled was unsupported by substantial evidence. (*Id.* at 9-10 (citing R. 21-25)).

In reply, Plaintiff zeroes in on the Commissioner's observation that the colonoscopies and diagnosis do not "unequivocally confirm[ ]" the alleged severity of Plaintiff's symptoms, pointing out that this is not the applicable standard. (Reply, ECF No. 16, at 1-2). He adds that pursuant to Social Security Ruling 16-3p symptoms are sometimes not objectively measurable via clinical or laboratory methods and a claimant's subjective complaints should not be disregarded "solely" because the medical evidence does not substantiate the degree of impairment alleged. (*Id.* at 1-2 (quoting Resp., ECF No. 15, at 7; SSR 16-3p)). Plaintiff acknowledges that the intensity of his symptoms may have varied over time, but he insists that the colonoscopies and prescriptions for UC medications constitute objective evidence supporting Dr. Stone's opinions. (*Id.* at 2 (citations omitted)). Additionally, he disputes the Commissioner's contention that his ADLs supported the ALJ's partial rejection of Dr. Stone's opinions. (*Id.* at 2-3).

**B.    Analysis**

The Commissioner modified Social Security's regulations in 2017, changing the way ALJs evaluate medical evidence. The prior regulations, governing claims filed before March 27, 2017, divided medical sources into three categories: treating, examining, and non-examining. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). ALJs were to weigh each medical opinion and could sometimes afford controlling weight to opinions from treating sources. *See id.*

11

Under the new regulations, ALJs do not place medical sources into these categories and can no longer afford controlling weight to any opinion. *See id.* §§ 404.1520c(c), 416.920c(c). Instead, ALJs now evaluate the persuasiveness of each medical opinion and each prior administrative medical finding. *See id.* Five factors determine persuasiveness: (1) supportability; (2) consistency; (3) relationship with the claimant, including length, purpose, and extent of the treatment relationship, as well as frequency of examinations and whether the medical source examined the claimant firsthand; (4) specialization; and (5) other factors, like "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *See id.* Supportability and consistency are the most important factors. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency. *Id.*

Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(2).

It is well established that an ALJ is free to reject a medical source opinion, in whole or in part, but in so doing she must indicate why evidence was rejected so that a reviewing court can determine whether "significant probative evidence was not credited or simply ignored." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); *Cotter v. Harris*, 642 F.2d

700, 705 (3d Cir. 1981).  The ALJ must consider all pertinent medical and nonmedical evidence

and "explain [any] conciliations and rejections" but need not discuss "every tidbit of evidence

included in the record."  *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004); *Burnett*, 220

F.3d at 122.  Accordingly, "[t]he ALJ must provide a 'discussion of the evidence' and an

'explanation of reasoning' for [her] conclusion sufficient to enable meaningful judicial review."

*Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (quoting *Burnett*, 220 F.3d at

120).

>           Here, the ALJ explained in relevant part:

>> Dr. Stone, the consultative examiner, provided two medical
>> opinions . . . [stating that Plaintiff] needs unrestricted restroom
>> access and readily available facilities due to his ulcerative colitis
>> (Exhibit 5F). This opinion is partially persuasive. Dr. Stone's exam
>> findings do not support this degree of limitations, but the
>> claimant's diagnoses and attendant symptoms are consistent with
>> some postural and environmental limitations, . . . .
>> However, . . . there are no objective findings consistent with the
>> need [for] unrestricted restroom access, despite the claimant's
>> subjective complaints.

(R. 25).

Plaintiff attempts to dispute the ALJ's consistency determination regarding a lack of

objective findings by pointing to his colonoscopies confirming his colitis diagnosis, as well as

his prescribed medications treating the condition.  (Pl.'s Br., ECF No. 14, at 7 (citing R. 692);

Reply, ECF No. 16, at 2).  However, "[t]he existence of a medical condition does not alone

demonstrate a disability for purposes of the Social Security Act."  *Raglin v. Massanari*, 39 F.

App'x 777, 779 (3d Cir. 2002) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)).  In

other words, "the ALJ's inquiry does not focus simply on whether [the claimant] suffers from the

various physical or psychological conditions in question."  *Id.*  Instead, "the issue is whether

those conditions not only exist but also result in a functional disability that prevents [the

claimant] from obtaining substantial gainful employment in the national economy."  *Id.*  With

these legal tenets in mind, it is clear that the ALJ's "no objective findings" conclusion is

supported by the record because the cited evidence merely confirms that Plaintiff has UC and

says little to nothing about its disabling effects.

Indeed, the only other evidence cited by Plaintiff aside from the colonoscopies and

medication is his own *subjective* reports regarding his restroom usage.  (Pl.'s Br., ECF No. 14, at

6, 8 (citing R. 485, 509, 663)).  However, "[a]lthough 'any statements of the individual

concerning [his] symptoms must be carefully considered,' the ALJ is not required to credit

them," and her findings in this regard "are to be accorded great weight and deference" since she

is the one who observes the claimant at the hearing.  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d

356, 363 (3d Cir. 2011) (citing SSR 96–7p and 20 C.F.R. § 404.1529(a)); *Irelan v. Barnhart*, 243

F. Supp. 2d 268, 284 (E.D. Pa. 2003) (citation and internal quotations omitted).  Plaintiff

counters that objective evidence may be unable to, and thus need not, "unequivocally confirm"

his subjective claims, and that the ALJ cannot disregard his self-reported symptoms solely due to

a lack of supporting evidence.  (Reply, ECF No. 16, at 2 (citing SSR 16-3p)).  Nonetheless, that

is not what occurred here.  As the ALJ explained, she refused to fully credit Plaintiff's subjective

complaints because at his most recent gastroenterology visit, he described his diarrhea symptoms

as not particularly bothersome during the day, not associated with other symptoms common to

IBS, and improved by Imodium and dietary restrictions (i.e., eating home-cooked rather than fast

food).  (R. 24 (citing Ex. 16F)).  He also described no incontinence at this or other provider

visits, as the ALJ further observed.  (*Id.*).  On this record,[4] the ALJ was justified in discounting

---

[4]  The Commissioner further contends that "Dr. Stone's opinion was also inconsistent
with Plaintiff's ability to perform various daily activities that the ALJ had discussed." (Resp.,
ECF No. 15, at 8).  He is correct that the ALJ noted that Plaintiff cooks, cleans, does laundry,
shops, handles his personal care and "still works as a driver about 12 hours a week . . . ." (R. 21,
23).  Nonetheless, she did not identify Plaintiff's ADLs as a basis for rejecting limitations
contained in Dr. Stone's opinion, and thus the Court does not consider this argument.  *See*
*Fongsue v. Saul*, No. 20-574, 2020 WL 5849430, at *8 (E.D. Pa. 2020) ("[T]his court is

Plaintiff's subjective allegations and Dr. Stone's proffered restriction regarding the need for

unlimited restroom access,[5] even if other evidence might have supported a contrary conclusion.

*See Simmonds*, 807 F.2d at 58; (*cf.* R. 24 (ALJ acknowledging that at the same visit Plaintiff also

reported feeling poorly, stabbing pain during episodes of diarrhea, and weight loss, albeit more

than what was reflected in his treatment notes)).

As set forth herein, the ALJ reasonably articulated her consistency analysis when she

addressed the lack of any "objective findings consistent with the need for unrestricted restroom

access," notwithstanding Plaintiff's subjective claims to the contrary.  (R. 25).  The Court further

notes that, although seemingly unchallenged by Plaintiff, the ALJ also fulfilled her obligation to

explain the supportability of Dr. Stone's opinions when she wrote that "Dr. Stone's exam

findings do not support th[e] degree of limitations" set forth therein.  (R. 25; *see also* R. 487, 511

(setting forth only "mild" results from her examinations of Plaintiff's abdomen)).  Because the

ALJ adequately addressed these factors, *see* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), the

Court denies Plaintiff's request for review.

---

constrained to review only the ALJ's reasoning, not the *post hoc* arguments propounded by
Defendant after the ALJ's decision.") (citation omitted); *Sec. & Exch. Comm'n v. Chenery
Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged
are those upon which the record discloses that its action was based."); *Teada v. Comm'r of Soc.
Sec.*, No. 19-4537, 2020 WL 1953660, at *2-3 (E.D. Pa. 2020) (citations omitted).

[5] Relying on *Leo*, a case from the Western District of New York, Plaintiff posits that
diarrhea due to IBS or UC is definitionally "urgent, frequent, and unpredictable," and thus must
be accounted for by increased restroom access.  (Pl.'s Br., ECF No. 14, at 7 (citing *Leo*, 2019
WL 4508937, at *6)).  However, unlike this case, *Leo* involved objective evidence of the severity
of Plaintiff's condition, such as "a two-stage J-pouch surgery to address Plaintiff's left-sided
refractory colitis." *Leo*, 2019 WL 4508937, at *2 (citation omitted).  In addition, Leo's
subjective reports appear to have been less equivocal, with her most recently telling her
providers that she had eight to 10 watery bowel movements daily. *Id.* at *3.  Here, by contrast,
"the claimant reported general improvement of symptoms with Imodium and dietary changes as
well as primarily nighttime symptoms at the most recent visit."  (R. 24).  Accordingly, *Leo* is not
merely non-controlling; it is also distinguishable.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff's request for review is **DENIED**.  An

appropriate Order follows.

BY THE COURT:

  /s/ Lynne A. Sitarski

LYNNE A. SITARSKI
United States Magistrate Judge